Robert Mackey
LAW OFFICES OF ROBERT MACKEY
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110
*bobmackeyesq@aol.com*

Nicholas A. Migliaccio *
Jason S. Rathod *
MIGLIACCIO & RATHOD LLP
412 H St. NE, Suite 302
Washington, D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK DUVALL, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | <u>JURY TRIAL DEMANDED</u> |
| GE Appliances and Haier US Appliance Solutions, Inc., | |
| Defendants. | |

Plaintiff Mark Duvall, on behalf of himself and all others similarly situated, by and through their undersigned counsel, brings this action against GE Appliances and Haier US Appliance Solutions, Inc. (collectively, "GE Appliances" or "Defendants"). For his Complaint, Plaintiff alleges the following based on personal knowledge as to his own acts and on the investigation conducted by counsel as to all other allegations:

1. **<u>NATURE OF THE ACTION</u>**

1.   Plaintiff brings common law warranty claims and claims under the California Consumer Legal Remedies Act, § 1750, *et seq*., California False Advertising Law, § 17500, *et seq*., California Unfair Competition Law, § 17200, *et seq*., and Song-Beverley Consumer Warranty Act, §§ 1791.1, 1791.2, 1792 & 1793.2(D), against Defendants GE Appliances and Haier US Appliance Solutions, Inc.

2.   This action arises from the sale of thousands of GE Profile Ultrafast 2-in-1 Washer/Dryer Combo (the "Class Appliance" or "Class Appliances") throughout California that were manufactured by Defendants with defective lint traps, causing the Class Appliance to suffer excessive lint buildup along its condenser coils that is difficult to remove, greatly diminishing the effectiveness of the dryer and leaving its contents wet (the "Lint Trap defect" or "the Defect").

3.   The Class Appliance retails for up to nearly $3,000. Its two-in-one design is especially attractive to consumers because it appears to save space that would normally be taken up by two different devices.

4.   All Class Appliances share the same defective lint traps that GE Appliances failed to disclose to Plaintiff and Class Member consumers.

5.   The Class Appliances uses an "EZ Access Lint Filter System" that GE Appliances describes as: "An exclusive, easy-to-reach lint filter system allows you to remove lint and micro particles, ensuring your Combo operates at the highest levels of efficiency."[1]

6.   The lint compartment consists of a "two-stage housing consisting of a lint filter and a foam filter[,]" the latter of which is rated by GE Appliances as having "an approximate lifespan of 1000 cycles, which is about 2.5 years for an average household."[2]

7.   According to GE Appliances, "less lint is generated through air tumbling compared to standard dryers."[3] The lint generated, according to GE Appliances, is "very fine"[4] meaning that the lint filter does not need to be cleaned out more than once every fifth dry cycle, so as to allow for

---

[1] https://www.geappliances.com/ge/connected-appliances/ultrafast-2-in-1-washer-dryer-combo (last viewed on 2/24/2025).
[2] https://products.geappliances.com/appliance/gea-support-search-content?contentId=000063794 (last viewed on 2/24/2025).
[3] *Id*. (last viewed on 2/24/2025).
[4] *Id*. (last viewed on 2/24/2025).

1    "the lint to combine into larger particles and makes cleaning easier."[5] GE Appliances represents that

2    the Class Appliance "has been designed and thoroughly tested to deliver great performance even

3    with some buildup of lint."[6]

4    8.   Plaintiff and Class Members' Class Appliances failed to dry its contents a few months after

5    purchase, even after running the Class Appliance multiple times. The issue lies with the lint filter

6    system that fails to appropriately capture generated lint, which then finds its way to the Class

7    Appliance's condenser coils. The consequences of accumulated lint on condenser coils include

8    restricted airflow, increased drying time, overheating, and/or a wet lint trap.

9    9.   GE Appliances sold and continues to sell the Class Appliance despite its awareness of the

10   Defect. GE Appliances chose and continues to choose financial gain at the expense of consumers by

11   concealing and omitting a disclosure of this critical lint trap component failure to consumers who

12   purchase the Class Appliance.

13   10. Despite its knowledge, GE Appliances has failed to issue a recall of the inherently defective

14   lint traps or reimburse Class Appliance owners for the failure of this critical part. Instead, GE

15   Appliances denies there is a problem or ignores customer queries from affected customers.

16   11. As such, owners of Class Appliances have been turned away from receiving repairs when

17   they notify GE Appliances of the condition of their Class Appliances for diagnosis and repair,

18   and/or receive ineffective repairs.

19   12. There are likely thousands of Class Appliances that will not be recalled but that are at risk of

20   experiencing the Defect. This is a major safety concern because Class Appliances that are not

21   timely repaired are at risk of overheating and fire, given the accumulation of lint combined with the

22   high operating temperature of the Class Appliance.

23   13. Because the Defect can also manifest shortly outside of the warranty period for the Class

24   Appliances—and given GE Appliances' knowledge of this concealed, safety-related defect—GE

25   Appliances' attempt to limit the warranty as detailed herein with respect to the Lint Trap Defect is

26   unconscionable and unenforceable.

27   _____

28   [5] *Id*. (last viewed on 2/24/2025).
     [6] *Id*. (last viewed on 2/24/2025).

CLASS ACTION COMPLAINT

14. Plaintiff and Class Members have suffered harm because of GE Appliances' decision not to disclose the Defect by overpaying for their Class Appliances and by paying significant sums for GE Appliances to attempt, and fail, to properly diagnose and repair their Class Appliances that exhibit the Lint Trap defect. Plaintiff's and Class Members' harm also includes do-it-yourself workarounds that they've had to resort to as possible solutions to this problem. Plaintiff and Class Members have also expended time in attempting to have the Lint Trap Defect repaired.

15. GE Appliances has long known of the Defect and that the Class Appliances' lint traps are not fit for their intended purpose, as detailed at length in the factual background section below.

16. GE Appliances actively concealed and/or failed to notify the public of the existence and nature of the Defect and of the safety hazard created by the Defect. GE Appliances has not recalled the Class Appliances to replace the lint traps; it has not offered to replace the lint traps for its customers free of charge; and it has not offered to reimburse owners, present or past, who have incurred costs relating to diagnosing and repairing issues arising from the Defect. GE Appliances' conduct violates well-established consumer protection laws in California and constitutes a continuous breach of its warranties to Plaintiff and consumers in the United States.

17.  Plaintiff brings this action on behalf of himself and all those similarly situated ("Class," "Class Members," "Consumers," "Owners") for GE Appliances' breach of its warranties across the United States and GE Appliances' deceptive trade practices in violation of the consumer protection laws of California.

18. On behalf of the Class he seeks to represent, Plaintiff seeks an award of damages over $5,000,000, including the costs of inspecting and replacing the defective lint traps and condenser coils, equitable relief, and an order requiring GE Appliances to adequately disclose and repair the Defect. Furthermore, Plaintiff seeks damages, injunctive and declaratory relief, restitution, disgorgement of profits, attorneys' fees and costs, punitive damages, and the repair, replacement, or refund of money paid to own all Class Appliances purchased in California.

## 2. **PARTIES**

19. Plaintiff Mark Duvall is a citizen and resident of Half-Moon Bay, California.

20. Defendant GE appliances is a Kentucky company with its principal place of business at 4000 Buechel Bank Rd., Louisville, KY 40225. Defendant designs, manufactures and sells appliances throughout the United States, including in the State of California, under the GE Appliances brand name. GE Appliances does business in California, advertising, distributing, and selling its appliances through its retail network and other outlets in the State.

21. Defendant Haier US Appliance Solutions, Inc. is a Kentucky company with its principal place of business at 4000 Buechel Bank Rd., Louisville, KY 40225. Defendant Haier US Appliance Solutions, Inc. is the parent company of GE Appliances.

**3. <u>JURISDICTION AND VENUE</u>**

22. This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6) because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is complete diversity because Plaintiff and Defendants are citizens of different states.

23. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of named Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

24. This Court has general and specific jurisdiction over the Defendants. Defendants have sufficient minimum contacts within California and this District because Defendants purposefully availed themselves of the privileges of conducting business in this State and District; because Defendants regularly conduct and solicit business within this State and District; and because Plaintiff's causes of action arise directly from Defendants' business decisions, contacts, and other activities in this State and District.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Additionally, GE Appliances distributes Class Appliances in this District, receives substantial compensation and profits from the sale of Class Appliances in this District, and continues to conceal the Defect through statements made in this District.

1

## 4. FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

2    26. GE Appliances manufactures, markets, distributes, and warrants appliances, including the

3    Class Appliance, in the United States sold under the GE Appliances brand. This lawsuit concerns

4    the GE 2-in-1 Washer/Dryer Combo, sold to consumers in the United States, including to Plaintiff.

5                                      **THE DEFECT**

6    27. GE Appliances, directly and through its authorized retail partners, failed to disclose to

7    Plaintiff, Class Members, and the public that the Class Appliances contain a defective lint trap that

8    renders the appliance unfit for its intended purpose. This omission allowed Defendants to sell the

9    Class Appliance and profit from its sale. However, GE Appliances knew that the lint traps contained

10   a dangerous, inherent defect from the point of manufacture that causes the Class Appliance to

11   exhibit the Lint Trap Defect.

12   28. A dryer's lint trap is a component designed to capture and collect lint, fibers, and other

13   debris that come off of clothing and other items during the drying process. It is typically a screen or

14   mesh-like structure located inside the dryer drum.

15   29. Lint from tumbling items is picked up by the dryer's warm air, that then passes through the

16   lint trap's mesh filter as it exits the machine through the dryer vent. The lint trap prevents lint and

17   fluff from becoming trapped in the dryer's exhaust hose.[7]

18   30. Regular cleaning of the lint trap is necessary for the efficient functioning of dryers because

19   doing so maintains the appliance's air flow. Additionally, lint buildup presents a fire hazard due to

20   its dry nature combined with the high operating temperatures of dryers, so removing lint buildup

21   lowers this fire risk.

22   31. Condenser dryers use condenser coils, which convert the hot, moist air from the wet laundry

23   into dry air. Moisture is removed from the tumbling items. The moist air passes through the

24   condenser unit, where it is cooled down, causing it to condense into water. The condensed water is

25   then collected or pumped through a drain hose.

26

27

28

---

[7] https://www.whirlpool.com/blog/washers-and-dryers/how-to-clean-a-dryer-lint-trap.html (last accessed 2/24/2025).

CLASS ACTION COMPLAINT

32. The Class Appliance is a ventless condenser dryer, meaning it "does not rely on a vent system to remove the moisture from the dryer."[8] Moisture is condensed into water "using a dual airflow system [that] then pumps it into the house standpipe or into a closed system reservoir that can be emptied."[9] GE Appliances advises that one of the things an owner should do to keep condenser dryers operating at optimal performance is to "[k]eep the lint trap clean."[10]

33. The Defect occurs due to gaps found in the lint trap assembly that houses both the lint filter and the foam filter. With regards to the cleaning of the lint filter, GE Appliances notes the following on its webpage dedicated to the filters of the Class Appliance: "When reinstalling the lint filter, you may notice that there is a space where it seems the filter should go further back. This is normal. There is an intentional pocket of space at the back of the compartment so that if lint or foreign objects fall on the filter track, they can be pushed back to avoid blocking the filter or preventing the filter frame from sliding back into the closed position."

34. In other words, the lint trap assembly was designed with this gap in mind to trap lint that was otherwise not caught. Unfortunately for owners, not only does the lint trap fail to capture all of the lint created during the drying process, lint also finds its way onto the condenser coils themselves.

35. Lint that accumulates on condenser coils can cause several issues.

36. Lint buildup can block the airflow through the condenser coils, making it harder for the dryer to cool the warm, moist air. This can reduce the efficiency of the drying process.

37. With restricted airflow, the dryer may take longer to dry clothes, leading to higher energy consumption and longer drying cycles.

38. The dryer might overheat due to the restricted airflow, which can cause the dryer to shut down as a safety measure or even pose a fire hazard.

39. If the condenser coils are clogged, moisture may not properly be condensed and removed, resulting in a wet lint trap.

---

[8] https://products.geappliances.com/appliance/gea-support-search-content?contentId=38709 (last accessed 2/24/2025).
[9] *Id*. (last accessed 2/24/2025).
[10] *Id*. (last accessed 2/24/2025).

40. GE Appliances' notice of the Defect derived from, among other things, both GE Appliances' own knowledge of the material, design, and manufacture of the part, and outside feedback, directly and through its retail partners, from its customers during repairs, complaints made through its own website, and complaints on websites of retail partners and social media monitored by GE Appliances.

**A.  GE Appliances knew of the Defect through multiple consumer complaints.**

41. GE Appliances' website directs prospective customers to purchase the Class Appliance through its retail partners, as well as through its own online store.

42. Collectively, customer reviews left on GE Appliances' website alone amount to hundreds of complaints related to the Class Appliances' poor drying performance.

43. As the complaints make clear, GE Appliances' customers have long put the company on notice of the defective performance of its Class Appliances.

44. An appliance with the bevy of performance issues detailed below frustrates the essential purpose of the Class Appliance, which is to effectively and consistently dry its contents.

45. Needing to run multiple drying cycles, with little to no improvement from one cycle to another, significantly interferes with an owner's ability to operate their Class Appliance in a way the reasonable consumer expects. Attached to this Complaint as Exhibit A is a sample of customer complaints from GE Appliance's own website.

**B.  GE Appliances knew of the Defect through its testing and validation of the Class Appliance.**

46. GE Appliances represents itself as "the fastest-growing appliance manufacturing company in the U.S., with more than a century of industry experience."[11] Its experience creating, designing, building, delivering and servicing products is reflected by the metrics that it "build[s] 2,333 units per hour, deliver[s] an appliance every 13.8 seconds and ship[s] 28.1 million parts and accessories."[12] GE Appliance's 2022 Economic Impact Report reflects that its "investments in plant and equipment, R&D, new product development and logistics, which grew significantly in 2022,

---

[11] https://geappliancesco.com/about-us/ (last accessed 2/24/2025).
[12] *Id.* (last accessed 2/24/2025).

exceed $2 billion since 2017."[13] The company represents that it "engineer[s] [its] appliances to precise specifications and subject[s] them to rigorous testing. In much the same vein, our parts meet the strictest standards of craftsmanship and quality."[14]

47. GE's Lead Designer of the Class Appliance, Ken Rudolph, stated that, because "the industry hasn't had a wash-and-dry protocol[,]" for combo washer-dryers such as the Class Appliance, GE created the testing protocols for combo machines such as the Class Appliance, but also tested the Class Appliance using industry standards for washers and for dryers.[15]

48. Rudolph stated that the Class Appliance underwent not only laboratory testing, but also "real-world testing[,]" where it was placed "in about two dozen homes, and that's when we tortured test the hell out of it."[16] Field testing included "monitor[ing] the entire cycles with them and see[ing] the variety of loads."[17] The field testing components were incorporated into GE's testing protocol for combo devices and it "added different types of loads that were deficiently covered in standard wash and test protocols."[18]

49. GE's testing protocols include a "multi-year, [] 20-year reliability on our heat pump systems, the heat exchange or the fan, as well as the components of the motor and the overall suspension system of the washer."[19]

50. Such a testing and validation process would discern the Defect, yet GE Appliances marketed and sold the Class Appliance even with such knowledge.

## C. **GE Appliances systematically refuses to disclose the known defect and refuses to honor its warranties to Class Members by declining to repair the known defect.**

51. The Class Appliance is sold with a one-year Year Limited Warranty.

52. While the condenser, as part of the sealed heat pump drying system, is covered by an additional four-year Limited Warranty, the customer is left with labor and service costs. These costs

---

[13] https://geappliancesco.com/content/GEA_Economic_Impact_Report_2022.pdf (last accessed 2/24/2025).
[14] https://www.geappliances.com/ge/parts/genuine-gea-parts/ (last accessed 2/24/2025).
[15] https://blog.yaleappliance.com/the-new-ge-profile-ultrafast-2-in-1-washer-dryer-combo-pfq97hspvds-tough-questions-for-the-creator (last accessed 2/24/2025).
[16] *Id*. (last accessed 2/24/2025)
[17] *Id*. (last accessed 2/24/2025)
[18] *Id*. (last accessed 2/24/2025)
[19] *Id*. (last accessed 2/24/2025)

1    could quickly add up in repeated fashion, since it is due to the Lint Trap Defect that lint finds its

2    way to the condenser coils.

3        53. The durational limitations in GE Appliances' Limited Warranty, as applied to Plaintiff and

4    Class Members, are unconscionable. GE Appliances knew about the inherent defect in the lint trap

5    at various points, including: (1) when it designed and manufactured the lint trap and performed pre-

6    sale testing and validation, (2) when individuals began to lodge complaints with GE Appliances

7    through its own website and through the websites of its authorized retail partners, and (3) before

8    Plaintiff and the Class purchased their Class Appliance and/or paid for repairs that were not covered

9    under warranty.  Still, GE Appliances opted not to warn, disclose, or otherwise inform the potential

10   or eventual purchasers about the Defect. GE Appliances continues to refuse disclosure of this

11   known defect to this date on newly sold Class Appliances.

12       54. GE Appliances has never disclosed the Defect to actual or potential purchasers of Class

13   Appliances, and GE Appliances has never instructed its retail partners to disclose the Defect to

14   actual or potential purchasers of Class Appliances.

15       55. The Defect was not known to or reasonably discoverable by the Plaintiff and proposed Class

16   Members before purchase, or without experiencing the Defect first-hand.

17       56. For example, in its filter cleaning instructions, GE Appliances states that the Class

18   Appliance "creates very little lint, and the lint particles are very fine."[20] GE Appliances suggests

19   cleaning the lint filter after every fifth cycle, because at that point the lint will have combined "into

20   larger particles and makes cleaning easier."[21]

21       57. GE Appliances has remained publicly silent even as it has learned of at least hundreds of

22   complaints about the Class Appliance directly from its customers, through its own website, from its

23   authorized retailers, and from its authorized service centers.

24       58. Because of GE Appliances' inaction and silence, many consumers are unaware that they

25   purchased and continue to use an unreliable appliance. As GE Appliances knows, a reasonable

26

27

28   [20] https://products.geappliances.com/appliance/gea-support-search-content?contentId=000063794 (last accessed
     2/24/2025).
     [21] *Id.* (last accessed 2/24/2025).

CLASS ACTION COMPLAINT

1  person would consider the Defect important and would either not purchase a dryer with the Defect

2  were the Defect disclosed in advance, or would pay substantially less for the appliance.

3      59. Despite its knowledge, GE Appliances has failed to issue a recall of the inherently defective

4  lint traps or reimburse Class Appliance owners for the inevitable failure of this critical part.

5      60. Plaintiff and the putative Class neither knew, nor could have known, about the defective

6  nature of the lint traps at the time they purchased their Class Appliance. GE Appliances knowingly

7  manufactured Class Appliances that contained an inherent defect, but it did not inform Plaintiff of

8  the problem when Plaintiff agreed to purchase their Class Appliance or at any time thereafter. GE

9  Appliances has vigorously refused to acknowledge that the lint traps are the source of the Defect to

10  avoid having to pay for a replacement with a non-defective lint trap under its Limited Warranty. GE

11  Appliances intentionally limited the company's liability for the known defect, and Plaintiff and

12  putative Class Members never could bargain for a warranty that would have covered the Defect

13  because they did not know of its existence. GE Appliances' material omission concerning the

14  Defect rendered the warranty unconscionable as applied to Plaintiff and Class Members.

15                              **PLAINTIFF'S EXPERIENCE**

16  **<u>Mark Duvall</u>**

17      61. On or about October 27, 2023, Plaintiff Mark Duvall purchased his GE Profile Combo in-

18  person from the retailer CG Appliance, located in 6422 Mission St, Daly City, CA 94014 for

19  $2,199.99. Plaintiff Duvall's washer-dryer combo came with a defective lint trap that made it

20  susceptible to line build up, and which has already impacted the Class Appliance's ability to

21  properly dry clothing. GE Appliances did not disclose this defect to Plaintiff Duvall, who greatly

22  valued the advertised features and wanted a machine that could both wash and dry his clothing.

23

24      62. Plaintiff Duvall's purchase is covered by a one-year Limited Warranty, and the condenser is

25  covered by a five-year Limited Warranty, but labor and service costs are not included.

26      63. Plaintiff Duvall saw the marketing surrounding the Class Appliance, which stated fast

27  laundry times of two hours, energy efficiency, and two-in-one washing-drying capabilities. None of

28  the marketing addressed the Lint Trap Defect within the Class Appliance and the long-term effects

on the Class Appliance's capabilities to dry efficiently. At no point before Plaintiff Duvall purchased his Class Appliance did GE Appliances make him aware that his Class Appliance would be at risk of being unable to perform half of its function: drying. Plaintiff Duvall relied on the ability of the Class Appliance to perform its basic function of drying in a standard manner when purchasing the device.

64. Plaintiff Duvall experienced the Lint Trap Defect in or around June 2024. Plaintiff Duvall began to experience an increase in the time taken by the machine to dry, and a build-up of lint on condenser coils. In or around September 2024, the machine began to stop the drying cycle altogether even though his clothes were still wet. Despite the failure to dry, Plaintiff Duvall was not shown any error codes or notifications in his mobile app. Upon checking the machine, Plaintiff Duvall noticed that the duct carrying the lint was clogged, causing very little lint to show up on the lint trap. All of this occurred even though Plaintiff Duvall followed the appliance instructions to clean the lint filter after each use.

65. Defendants received notice of the defective Class Appliance through numerous consumer complaints made on GE Appliances' website. Reviews left by Class Members highlight the slow response and ineffectiveness of Defendants' repairs. Additionally, while repairs might appear to fix the Class Appliance, lint will continue to build up on the condenser coils due to the poor design of the lint trap assembly, meaning that repeated repairs will be needed again in the future. GE Appliances has refused to replace the defective Class Appliances and cover additional losses experienced by Plaintiff and the Class.

66. Plaintiff Duvall requested a service call from Defendants in or around September 2024. The service representative visited the home and said, upon seeing the Class Appliance, "oh, you have the monster?" and described problems that other consumers had encountered with it. He encouraged Plaintiff Duvall to obtain a home warranty to offset future issues with the Class Appliance. The representative serviced the Class Appliance, which improved the issue temporarily. Defendants

attempted to charge Plaintiff for this service call, which he was able to get for free only after significant pushback. The Defect returned two months later in November 2024. To remedy the issue, Plaintiff Duvall has had to completely stop using the dryer mode of the device. Given that his machine is now outside the warranty period, he will be charged for future service calls or will be compelled to get an extended warranty.

67. Plaintiff Duvall purchased his Class Appliance with the Lint Trap Defect. As part of the transaction, GE Appliances did not disclose the material facts related to the Class Appliance's essential purpose – washing and fully drying laundry. Plaintiff Duvall did not receive the benefit of his bargain. He purchased an appliance that is of a lesser standard, grade, and quality than represented. The Lint Trap Defect has significantly diminished the value of Plaintiff Duvall's Class Appliance.

68. Had GE Appliances disclosed the Defect, Plaintiff Duvall would not have purchased his Class Appliance, or would have paid less to do so.

69. Plaintiff Duvall estimates having spent approximately $50 attempting to remedy the Defect himself, including on brush and vacuum attachments to clean the coil of the machine.

70. Plaintiff Duvall has never received reimbursement for his out-of-pocket expenses or for his lost time spent attempting to have the Defect repaired.

## CLASS ACTION ALLEGATIONS

71. Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff intends to seek certification of a California Class consisting of:

> **All natural persons in California who purchased a GE Ultrafast 2-in-1 Washer/Dryer Combo.**

72. Excluded from the proposed class are: GE Appliances, any affiliate, parent, or subsidiary of GE Appliances; any entity in which GE Appliances has a controlling interest; any officer, director, or employee of GE Appliances; any successor or assign of GE Appliances; anyone employed by

counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, and the spouses of such persons; and anyone who purchased a Class Appliance for resale.

## NUMEROSITY

73. The members of the classes are so numerous that joinder of all members is impracticable. While the precise number of Class Members can only be confirmed through discovery, it is estimated that at least hundreds of persons purchased Class Appliances.

## COMMON QUESTIONS OF LAW AND FACT PREDOMINATE

74. There is a well-defined community of interest in the questions of law and fact affecting the Class Members.

75. There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendants that gives rise to those claims of the putative classes, and Plaintiff's claims are based upon the same legal theories as those of the putative classes. The Defendants have engaged in a pattern and practice, in violation of the law, of not informing purchasers or potential purchasers of the known Defect in the Class Appliances. The resolution of this issue—to wit, whether Defendants knew about the Defect and did not inform Plaintiff and Class Members—is a common question of fact and law that will affect all members of the class in the same manner.

76. The questions of law and fact common to the Class predominate over questions that may affect individual members, and include:

    a.   Whether GE Appliances disclosed the known Defect to Class Members prior to purchase;

    b.   Whether GE Appliances violated state consumer protection laws by concealing the known Defect;

c.   Whether Class Members are entitled to actual damages and, if so, the appropriate amount;

d.   Whether members of the classes may be notified and warned about the Defect and may have the entry of final and injunctive relief compelling GE Appliances to issue a notification and warning to all Class Members about such a Defect;

e.   Whether GE Appliances deliberately failed to disclose material facts to Plaintiff and the Class Members; and

f.   Whether Defendants manufactured defective condensers and should replace them at no cost to Plaintiff and the Class Members.

## TYPICALITY

77. The claims and defenses of Plaintiff are representative of the Class Members they seek to represent and typical of the claims and defenses of the class, because the Plaintiff and the Class Members all purchased or leased Class Appliances with defective condensers manufactured and sold by Defendants. Plaintiff, like all Class Members, received a Class Appliance without any warning or notification from Defendants of the Defect.

## ADEQUACY OF REPRESENTATION

78. The Named Plaintiff will fairly and adequately assert and protect the interests of the proposed class because:

a.   Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

b.   Plaintiff has no conflict of interest that will interfere with the maintenance of this class action; and

c.   Plaintiff has suffered consumer-related injuries and damages.

**SUPERIORITY**

79. A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

     a.    The common questions of law and fact set forth above predominate over questions affecting only individual Class Members;

     b.    The proposed Class is so numerous that joinder would prove impracticable. The proposed classes, however, are not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the class unmanageable.

     c.    Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against Defendants;

     d.    The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover for the damages done to them by GE Appliances.

     e.    A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

80. In the alternative, the proposed classes may be certified because:

     a.    the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class Members, which would establish incompatible standards of conduct for GE Appliances;

     b.    the prosecution of separate actions by individual Class Members would create a risk of adjudications dispositive of the interests of other Class Members not party to the adjudications and substantially impair or impede their ability to protect their interests; and

c.      GE Appliances has acted or refused to act on grounds generally applicable to the proposed Class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

**COUNT I**
**Violation of California's Consumer Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code § 1750, et seq.**
**(On behalf of the Nationwide Class, or, Alternatively, on Behalf of Plaintiff Duvall of the California Subclass)**

81. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. Plaintiff Duvall brings this cause of action individually and on behalf of the members of the Nationwide Class and California Subclass.

83. Defendants are "persons" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods" within the meaning of sections 1761(a) and 1770.

84. Defendants' acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7) and (9) because they include unfair and deceptive acts and practices in connection with transactions—the sale of defective countertop Class Appliances. In violation of the CLRA, GE:

85. Represented that the Class Appliances had characteristics, uses, and benefits they do not have;

86. Represented that the Class Appliances are of a standard, quality, or grade when in fact they are not; and

87. Advertised the Class Appliances with intent not to sell them as advertised.

88. Through its design, development, and pre-release testing of the Class Appliances' condenser, as well as through consumer complaints, GE knew that the Class Appliances' were made of low quality condensers that caused the Class Appliances' washer and dryer functions to fail. GE was under a duty to disclose that the Class Appliances are defective because it had superior knowledge of the Defect—stemming from repairs, complaints made directly to GE, online complaints, its quality control and pre-release testing, as well as online reputation management — and because it made partial, materially misleading representations about the Class Appliances' high quality and versatile features.

89. GE had ample means and opportunities to disclose to Plaintiff Duvall and Class Members that the Class Appliances are defective, including through advertisements, on external packaging, and during the Class Appliances' setup process. Despite its exclusive knowledge and opportunities to disclose the Class Appliances' defective nature, GE failed to disclose the Defect to Plaintiff Duvall and Class Members either prior to purchase or before Plaintiff Duvall and Class Members' respective buyer's remorse periods expired.

90. GE's misrepresentations and omissions were material. Had Plaintiff Duvall and Class Members known that the Class Appliances were defective, they would not have purchased the Class Appliances, would not have purchased them at the prices they did, or would have returned their Class Appliances during their respective buyer's remorse periods.

91. Under California Civil Code section 1782(a), on their own behalf and on behalf of the Class, Plaintiff Duvall sent notices to GE on February 12, 2025, via letter sent by certified mail to GE's principal place of business, advising GE of its violations and that it must correct, replace, or otherwise rectify the goods alleged to be in violation. GE failed to correct its business practices or provide the requested relief within 30 days. Accordingly, Plaintiff Duvall seeks monetary damages under the CLRA.

92. Plaintiff Duvall was injured by GE's CLRA violations. As a result, Plaintiff Duvall is entitled to actual damages in an amount to be proven at trial, reasonable attorney's fees and costs, declaratory relief and punitive damages.

**COUNT II**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, et seq.)**
**(On Behalf of the Nationwide Class, or,**
**Alternatively, on Behalf of Plaintiff Duvall of the California Class)**

93. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94. Plaintiff Duvall realleges and incorporates by reference all preceding paragraphs as though fully set forth herein on behalf of the California Subclass.

95. Cal. Bus. & Prof. Code § 17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

96. GE caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to GE to be untrue and misleading to consumers, including Plaintiff Duvall and Class members.

97. GE has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the quality and reliability of the Class Appliances and the Defect contained in the Class Appliances as well as the associated repair costs that result from it as set forth in this Complaint were material and likely to deceive a reasonable consumer.

98. GE has also violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the existence of a repair for the Defect and Defendants' ability and intention to render such a repair as set forth in this Complaint were material and likely to deceive a reasonable consumer.

99. Plaintiff Duvall and Class members have suffered an injury in fact, including the loss of money or property, as a result of GE's unfair, unlawful, and/or deceptive practices. In purchasing or financing their Class Appliances, Plaintiff Duvall and Class members relied on the misrepresentations and/or omissions of GE with respect to the quality, functionality, and reliability of the Class Appliances as well as the existence of a repair for the Defect. GE's representations turned out to be false because there are defects in the Class Appliances' condenser, which are not of high quality, and which fail prematurely and/or fail to function properly as detailed herein.

100.    Additionally, no permanent and reliable repair exists for the Defect. Had Plaintiff Duvall and Class members known this, they would not have purchased their Class Appliances and/or paid as much for them.

101.    Accordingly, Plaintiff Duvall and Class members overpaid for their Class Appliances and did not receive the benefit of their bargain.

102.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GE's business. GE's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

103.    Plaintiff Duvall, individually and on behalf of the Class, request that this Court enter such Orders or judgments as may be necessary to restore to Plaintiff Duvall and Class members any money GE acquired by unfair competition, including restitution and/or restitutionary disgorgement and all other relief allowed under Cal. Bus. & Prof. Code § 17500, including reasonable attorneys' fees and costs under California Cal. Civ. Proc. Code § 1021.5.

**<u>COUNT III</u>**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of Plaintiff Duvall of the California Class)**

104.    Plaintiff realleges and reincorporates by reference all preceding allegations as though fully set forth herein.

105.    Plaintiff Duvall brings this claim individually and on behalf of the other members of the California Subclass.

106.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17201.

107.    Defendants violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

108.    Defendants are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

109.    Pursuant to Cal. Bus. & Prof. Code § 17204, Plaintiff Duvall, and the members of the proposed Class, has suffered injury in fact and has lost money or property because of the unfair competition set forth herein.

110.    GE's conduct, as described herein, was and is in violation of the UCL. GE's conduct violates the UCL by, among other things; (a) failing to disclose the existence of the Defect in the Class Appliances; (b) marketing and promoting the Class Appliances as being free from defect, including the Lint Trap Defect which causes the Class Appliances to fail to perform their essential function and creates safety risks; (c) knowingly and intentionally concealing the existence of the Defect in the Class Appliances; (d) violating California laws, including the CLRA; and (e) breaching its express and implied warranties.

111.    GE intentionally and knowingly misrepresented and omitted material facts regarding the Class Appliances with intent to mislead Plaintiff Duvall and other Class members.

112.    In purchasing or financing the Class Appliances, Plaintiff Duvall and other Class members were deceived by GE's failure to disclose the Lint Trap Defect found in the Class Appliances.

113.    Plaintiff Duvall and other Class members reasonably relied upon GE's false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known Lint Trap Defect in the Class Appliances. Plaintiff Duvall and other Class members did not, and could not, discover Defendants' deception on their own.

114.    Defendants knew or should have known that its conduct violated the UCL.

115.    Defendants owed Plaintiff Duvall and other Class members a duty to disclose the truth about the Lint Trap Defect because the Defect created a safety hazard and Defendants: (a) possessed exclusive knowledge of the Defect; (b) intentionally concealed the Defect from Plaintiff Duvall and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Appliances due to the Defect.

116.     Defendants had a duty to disclose the existence of the Defect in the Class Appliances because Plaintiff Duvall and other Class members relied on Defendants' material misrepresentations and omissions.

117.     Defendants' conduct proximately caused injuries to Plaintiff Duvall and other Class members that purchased or financed the Class Appliances and suffered hard as alleged herein Plaintiff Duvall and other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff Duvall and other Class members incurred costs related to the diminished functionality caused by the Defect, including service costs, and overpaid for their Class Appliances that have suffered a diminution in value.

118.     Plaintiff Duvall and the Class members are suffering from continuing injuries because GE has failed to issue an adequate remedy for the Defect found in each of the Class Appliances. Defendants' unlawful acts and practices complained of herein affect the public interest.

119.     Defendants' misrepresentations and omissions alleged herein caused Plaintiff Duvall and other Class members to make their purchases or financing of their Class Appliances. Absent those misrepresentations and omissions, Plaintiff Duvall and other Class members would not have purchased or financed their Class Appliances, would not have purchased or financed their Class Appliances at the prices they paid, and/or would have purchased or financed less expensive alternative washer and dryers that did not suffer from the Lint Trap Defect and failed to live up to industry standards.

120.     Accordingly, Plaintiff Duvall and other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

121.     Plaintiff Duvall requests that this Court enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, and order restitutionary disgorgement of all monies and

1    revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof.

2    Code § 17200, including reasonable attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5.

3                                    **COUNT IV**
                          **VIOLATIONS OF THE SONG-BEVERLY**
4                         **CONSUMER WARRANTY ACT -**
                          **(Cal. Civ. Code §§ 1791.2 & 1793.2(D))**
5
        122.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though
6
7    fully set forth herein.

8        123.    Plaintiff Duvall brings this claim on behalf of himself and on behalf of the members

9    of the California Subclass.

10       124.    Plaintiff Duvall and the California Subclass members are "buyers" within the

11   meaning of Cal. Civ. Code § 1791(b).

12
         125.    The Class Appliances are "consumer goods" within the meaning of Cal. Civ. Code §
13
14   1791(a).

15       126.    GE is a "manufacturer" of the Class Appliances within the meaning of Cal. Civ.

16   Code § 1791(j).

17       127.    Plaintiff Duvall and the other Class members bought new Class Appliances

18   manufactured by GE. GE made express warranties to Plaintiff Duvall and the other Class members

19   within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above. These warranties

20   became part of the basis of the parties' bargain. Accordingly, GE's warranties are express
21
22   warranties under state law.

23       128.    Plaintiff Duvall and California Subclass members experienced the Defect within the

24   warranty period. Despite the existence of warranties, GE failed or refused to fix the Lint Trap

25   Defect.

26       129.    Plaintiff Duvall and California Subclass members put GE on notice of the Defect and
27
     gave GE opportunity to remedy the Defect. GE did not promptly replace or buy back the Class
28
     Appliances of Plaintiff Duvall and the other Class members.

130.     Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff Duvall and the other California Subclass members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Appliances, or the overpayment or diminution in value of their Class Appliances.

**COUNT V**
**VIOLATIONS OF THE SONG-BEVERLY ACT -**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Civ. Code §§ 1792, 1791.1, et seq.)**

131.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

132.     Plaintiff Duvall brings this claim on behalf of himself and on behalf of the members of the California Subclass against GE.

133.     At all relevant times hereto, GE was the manufacturer, distributor, warrantor, and/or seller of the Class Appliances. GE knew or should have known of the specific use for which the Class Appliances were purchased.

134.     GE provided Plaintiff Duvall and the California Subclass members with an implied warranty that the Class Appliances, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Appliances, however, are not fit for their ordinary purpose because, inter alia, the Class Appliances suffered from an inherent Lint Trap Defect at the time of sale.

135.     The Class Appliances are not fit for the purpose of providing reliable washing and drying functionalities because of the Defect.

136.     GE impliedly warranted that the Class Appliances were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Appliances were manufactured, supplied, distributed, and/or sold by GE were equipped with high quality condensers that would allow for proper washing and drying capabilities; and (ii) a

warranty that the Class Appliances would be fit for their intended use – providing reliable washing and drying functionalities while the Class Appliances were being used.

137.    Contrary to the applicable implied warranties, the Class Appliances were not fit for their ordinary and intended purpose. Instead, the Class Appliances are defective, including, but not limited to, the Lint Trap Defect.

138.    GE's actions, as complained of herein, breached the implied warranty that the Class Appliances were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**<u>COUNT VI</u>**
**BREACH OF EXPRESS WARRANTY, U.C.C. § 2-313**
**(On Behalf of the Nationwide Class, and, in the alternative,**
**by Plaintiff Duvall on behalf of the California Subclass)**

139.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140.    Plaintiff Duvall brings this claim on behalf of himself and on behalf of the Nationwide Class and, in the alternative, on behalf of the California Subclass.

141.    Defendants are "merchants" (as defined by CAL. COM. CODE § 2104(1)), and "sellers" (as defined by CAL. COM. CODE § 2103(d)).

142.    Pursuant to U.C.C. § 2-313(a)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

143.    The Class Appliances are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE § 2105(1).

144.    Defendants expressly represented that the GE 2-in-1 Washer/Dryer was equipped to provide washing and drying capabilities.

145.    This representation formed the basis of the bargain that was reached when Plaintiff Duvall and other Class members purchased their Class Appliances.

146.    Defendants breached this express warranty through the acts and omissions described above.

147.    Plaintiff Duvall and other Class members have had sufficient direct dealings with either Defendants or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendants on one hand, and Plaintiff Duvall and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Duvall and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' express warranties; the warranty agreements were designed for and intended to benefit the consumer only. Additionally, privity is excused here because Plaintiff Duvall and each of the other Class members relied on statements made by Defendants itself in choosing to purchase a Class Appliances. As alleged herein, the marketing of the Class Appliances was uniform and was controlled and disseminated directly by Defendants.

148.    Defendants knew that it was unable to provide adequate remedy under the warranty.

149.    Defendants were also provided notice of its misrepresentation through its own internal engineering knowledge. GE has not remedied its breach.

150.    Further, Defendants have refused to provide an adequate warranty repair for the Defect, thus rendering the satisfaction of any notice requirement futile.

151.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Duvall and other Class members whole and because Defendants have failed and/or has refused to adequately provide effective remedies within a reasonable time.

152.     Accordingly, recovery by Plaintiff Duvall and other Class members is not limited to the limited remedy of repair, and Plaintiff Duvall, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

153.     Also, as alleged in more detail herein, at the time that GE warranted and sold the Class Appliances, it knew that the Class Appliances did not conform to the warranty and were inherently defective, and Defendants improperly concealed material facts regarding its Class Appliances. Plaintiff Duvall and other Class Members were therefore induced to purchase the Class Appliances under false pretenses.

154.     Defendants had notice of its breach as alleged above. Additionally, on or about February 12, 2025, Plaintiff Duvall sent a pre-suit notice letter which Defendants have not responded to.

155.     As a direct and proximate result of Defendants' breach of its express warranty, Plaintiff Duvall and other Class members have been damaged in an amount to be determined at trial.

156.     Plaintiff Duvall, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE §§ 2314, 10212)
### (On Behalf of the Nationwide Class or,
### Alternatively, on Behalf of Plaintiff Duvall of the California Class)

157.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

158.     Plaintiff Duvall brings this claim individually and on behalf of the other members of the California Subclass against Defendants.

159.     Defendants are "merchants" (as defined by CAL COM. CODE § 2104(1)), and "sellers" (as defined by CAL. COM. CODE § 2103(d)).

160.    The Class Appliances are "goods" within the meaning of the Uniform Commercial Code and relevant state law, including CAL. COM. CODE § 2105(1).

161.    Defendants were, at all relevant times, the manufacturers, distributors, warrantors, and/or sellers of the Class Appliances. Defendants knew or had reason to know of the specific use for which the Class Appliances were purchased.

162.    Pursuant to CAL. COM. CODE § 2314(1) "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." CAL. COM. CODE § 2314(2)(c), (f).

163.    Defendants provided Plaintiff Duvall and other Class members with an implied warranty that the Class Appliances and any parts thereof are merchantable and fir for the ordinary purposes for which they were sold. However, the Class Appliances are not fit for their ordinary purpose of providing reasonably reliable 2-in-1 washing and drying capabilities at the time of sale or thereafter because, inter alia, the Class Appliances suffered from the Defect at the time of sale that created a failure to adequately dry clothes. Therefore, the Class Appliances are not fit for their particular purpose of providing reliable washing and drying capabilities.

164.    Defendants impliedly warranted that the Class Appliances were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Appliances were manufactured, supplied, distributed, and/or sold by Defendants, were reliable for providing washing and drying functionalities, and would not result in the premature failure of its condensers.

165.    Contrary to the applicable implied warranties, the Class Appliances at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Duvall

and other Class members with reliable and durable washing and drying functionalities. Instead, the Class Appliances suffer from a defective design(s) and/or manufacturing defect(s).

166.    Defendants knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Duvall and the Class.

167.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Appliances were of merchantable quality and fit for such use.

168.    Plaintiff Duvall and other Class members have had sufficient direct dealings with either Defendants or its agents – such as its stores, consumer affairs departments, and technical support – to establish privity of contract between Defendants on one hand, and Plaintiff Duvall and each of the other Class members on the other hand. Nonetheless, privity it not required here because Plaintiff Duvall and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and its stores, and specifically, of Defendants' implied warranties. The stores were not intended to be the ultimate consumers of the Class Appliances and have no rights under the warranty agreements provided with the Class Appliances; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff Duvall and each of the other Class members relied on statements made by Defendants itself in choosing to purchase a Class Appliance. As alleged herein, the marketing of the Class Appliances was uniform and was controlled and disseminated directly by Defendants.

169.    Defendants had notice of its breach as alleged above. Additionally, on or about February 12, 2025, Plaintiff Duvall sent a pre-suit notice letter which Defendants have not responded to.

170.    Plaintiff Duvall, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

### COUNT VIII
### Unjust Enrichment
### (on behalf of the Class)

171.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

172.    This claim is asserted on behalf of Plaintiff and the members of the Class to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against GE Appliances on the alleged basis of absence of contractual privity or otherwise.

173.    By its wrongful acts and omissions described herein, including selling the Class Appliances with defective condensers, GE Appliances was unjustly enriched at the expense of Plaintiff and the Class.

174.    Plaintiff and the Class members conferred a benefit upon GE Appliances by purchasing the Class Appliances at their full price for fully functional washer/dryers equipped with appropriate and working condensers. Had Plaintiff and the Class members known of the Defect, they would not have bought, or would have paid less for, the Class Appliances.

175.    GE Appliances knew that Class Members were purchasing the Class Appliances and still accepted the sum contemplated for fully functional washer/dryers equipped with appropriate and working condensers.

176.    Under the circumstances, it would be inequitable for GE Appliances to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing and selling the Class Appliances with defective condensers to Plaintiff and Class Members. Natural justice and equity require that Plaintiff and Class Members recover under the circumstances.

177.    Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from GE Appliances, and an order of this Court proportionally disgorging all profits, benefits, and other compensation wrongfully obtained by GE Appliances through its conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgement as follows:

a.      For an order certifying the proposed classes and appointing Plaintiff and Plaintiff's counsel to represent the classes;

b.      For an order awarding Plaintiff and Class Members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.      For an order awarding Plaintiff and the Class Members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper, including the repair of all Class Appliances, replacement or repurchase of all Class Appliances, and/or the refund of money paid to own all Class Appliances;

d.      For an order or orders requiring GE Appliances to adequately disclose and remediate the Defect and enjoining GE Appliances from incorporating the defective condensers into its washer/dryers in the future;

e.      For punitive damages;

f.      For statutory damages as provided by law;

g.      For an order awarding Plaintiff and the Class Members pre-judgement and post-judgement interest;

h.      For an order awarding Plaintiff and Class Members reasonable attorney fees and costs of suit, including expert witness fees; and

i.      For an order awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

The Plaintiff and each Class hereby demand trial by a struck jury of all issues triable by right.

1  DATED: March 25, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Robert Mackey*
Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

Jason S. Rathod, Esq.*
Nicholas A. Migliaccio, Esq.*
**Migliaccio & Rathod LLP**
412 H St N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

* Pro hac admission to be sought

CLASS ACTION COMPLAINT